IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRISCILA CRUZ-GONZALEZ, on behalf of her minor child D.M.S.C., <br><br> Plaintiff, <br><br> v. <br><br> JOHN F. KELLY, Secretary of Homeland Security; JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States; SARAH SALDANA, Director, U.S. Immigration & Customs Enforcement; LEON RODRIGUEZ, Director, U.S. Citizenship and Immigration Services; and THOMAS DECKER, Field Office Director, <br><br> Defendants. | CIVIL ACTION <br> NO. 16-5727 |

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**                                                                 **AUGUST 4, 2017**

Plaintiff moves this court to enjoin her expedited removal from the United States on various legal and constitutional grounds.  Following the Honorable Judge Paul S. Diamond's May 23, 2017 opinion in *Osorio-Martinez, et al.*, and the Third Circuit's 2016 decision in *Castro*, this Court will adopt that line of reasoning and deny Priscilla Cruz-Gonzalez's petition.  This Court further relies on and adopts Judge Diamond's opinion in *Osorio-Martinez* in concluding this Court lacks subject-matter jurisdiction.  This Court is aware the holding in *Osorio-Martinez* is not binding; however, it is instructive in this Court's review of Plaintiff's petition.  Furthermore, although this Court has yet to rule on the pending motions, this Court incorporates Plaintiff's arguments from their motion to amend the complaint and the Government's opposing papers in response.

**A.     BACKGROUND**

Plaintiff Priscilla Cruz-Gonzalez, and her minor child D.M.S.C., fled El Salvador for the United States seeking asylum due to the ongoing violence of the Mara Salvatrucha gang, otherwise known as MS-13.  MS-13, originally founded in Los Angeles in the late 1980s, is active throughout El Salvador, Honduras, and many cities across the United States.  Many Central Americans flee the gang violence in their home country expecting a safer life in the United States.  However, MS-13s ubiquity in the United States has forced this country to take a closer look at illegal immigration.

Twenty (20) year old Cruz-Gonzalez fled El Salvador with her then three-year (3) old daughter, D.M.S.C., and entered the United States in early 2016.  Cruz-Gonzalez and her daughter were first detained by United States Customs and Immigration Enforcement ("ICE") in 2016 and taken to Karnes County Residential Center in Karnes, Texas.  While detained, Border Patrol agents issued expedited removal orders against Cruz-Gonzalez and her daughter under 8 U.S.C. § 1225(b)(1).  Cruz-Gonzalez petitioned for asylum under fear of violence and persecution back in El Salvador; asylum officers denied her request after they determined there was a lack of "credible fear of persecution" within the meaning of 8 U.S.C. § 1225(b)(1)(B)(v). Cruz-Gonzalez and her daughter were relocated from one detention center to the next, until they were transferred to the Berks County Residential Center in Leesport, Pennsylvania ("BCRC") – in the Eastern District of Pennsylvania.  On October 15, 2016, Cruz-Gonzalez and her daughter were abruptly relocated to Dallas.  They were then transferred from Dallas, to Philadelphia, and back to Karnes, Texas, where Cruz-Gonzalez and her daughter were originally detained.  The

family's next transfer to Karnes, Texas, scheduled for November 3, 2016, was cancelled as Cruz-Gonzalez and her daughter boarded the plane. No explanation was given.

Following the cancelled transfer, the State of New York granted Cruz-Gonzalez's relatives guardianship over Cruz-Gonzalez citing her father's abandonment and the potential violence she and her daughter would face back in El Salvador. The New York State Family Court further stated it would not be in the child's best interest to return to her country of origin due to the lack of parental support and violence in the region. Cruz-Gonzalez then filed an I-360 petition for Special Immigrant Juvenile Status ("SIJ").

On February 16, 2017, the same day Cruz-Gonzalez petitioned for I-360 SIJ status, the Government announced it would be removing Cruz-Gonzalez and her daughter from the United States and deporting them back to El Salvador. This Court entered an Order enjoining the Government from removing the family until consideration of the I-360 Petition was complete. On February 28, 2017, the United States Citizenship and Immigration Services ("USCIS") granted Cruz-Gonzalez SIJ status.

**B.     ANALYSIS**

Cruz-Gonzalez seeks to enjoin her and her daughter's expedited removal from the United States. (ECF Docket No. 46-1, at 22.) Cruz-Gonzalez argues her status as a Special Immigrant Juvenile precludes her from expedited removal. (Id.) Cruz-Gonzalez also argues the Government's expedited removal order is unconstitutional and her continued detention violates the *Flores* Decree. (Id.) Finally, Cruz-Gonzalez requests this Court issue a writ of habeas corpus or injunction preventing the Government from executing the removal; or in the alternative, order the Government to place Cruz-

Gonzalez and her daughter in standard removal proceedings under 8 U.S.C. § 1229a. (Id.) This Court will deny Plaintiff's petition for the reasons stated below.

I. **Background**

   a. *Castro, et al. v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 427 (3d Cir. 2016)

In 2016, the Third Circuit decided a fairly similar immigration case to the one before this Court today. *Castro, et al. v. U.S. Dep't of Homeland Sec.,* 835 F.3d 422 (3d Cir. 2016), *cert. denied*, No. 16-812, 2017 WL 1366739 (U.S. Apr. 17, 2017). In *Castro*, petitioners illegally entered the United States from several Central American countries and were detained by Customs and Border Protection agents near the border from where they crossed. *Id.* at 427. After requesting asylum, DHS interviewed the petitioners and deemed there was "no credible fear" of persecution in their home countries of El Salvador, Honduras, and Guatemala. *Castro v. U.S. Dep't of Homeland Sec.*, 163 F. Supp. 3d 157, 158 (E.D. Pa. 2016), *aff'd* 835 F.3d 422 (3d Cir. 2016); *see also* 8 U.S.C. § 1225(b)(1)(B) (defining provisions governing asylum interviews). Following the denial, DHS ordered petitioners removed under the Immigration and Nationality Act ("INA"). *Castro*, 163 F. Supp. 3d at 158.

As in our case, petitioners in *Castro* sought habeas relief in this District, challenging the final expedited removal orders and requesting this Court vacate the removal orders and restart the removal process. *Id.* The petitioners asked this Court to determine whether it had subject-matter jurisdiction over the removal process although the INA severely limits judicial review on final expedited removal orders. *Id.* at 159. This Court concluded it lacked jurisdiction to review the final removal orders and found this limitation permissible under the Suspension Clause of the United States Constitution.

*Castro*, 163 F. Supp. 3d at 165-74; *see also* U.S. Const. art. § 9, cl. 2 (defining the suspension clause as precluding suspending the writ of habeas corpus unless rebellion or invasion of the public safety may require it).

The Third Circuit upheld this Court's decision and denied petitioners' appeal for a lack of jurisdiction, concluding the INA "makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under [§ 1252(e)]" and refused to apply it to the *Castro* petitioners. *Castro*, 835 F.3d at 430; *see also Osorio-Martinez, et al. v. Jefferson Beauregard Sessions, III et al.*, 5:17-cv-01747, ECF Docket No. 31, at 3 (May 23, 2017 Order). Further, the Third Circuit also concluded the limitation (no judicial review on final expedited removal orders) did not violate the Suspension Clause because aliens stopped at the border do not have Suspension Clause rights. *Id.* at 445-49 ("[W]e conclude that Petitioners cannot clear *Boumediene's* first hurdle—that of proving their entitlement *vel nom* to the protections of the Suspension Clause . . . [A]s recent surreptitious entrants deemed to be 'alien[s] seeking initial admission to the United States,' Petitioners are unable to invoke the Suspension Clause, despite their having effected a brief entrance into the country prior to being apprehended for removal."). Therefore, the Third Circuit upheld this Court's holding that it lacked jurisdiction to decide petitioners' claims.

### b. Special Immigrant Juvenile ("SIJ")

Special Immigrant Juvenile ("SIJ") status provides statutory authority for neglected or abandoned alien juveniles to reside in the country under long-term foster care. 8 U.S.C. §§ 1101(a)(27)(J), 1255(a); *see also* U.S. Citizenship and Immigration Services, History of SIJ Status, https://www.uscis.gov/green-card/special-immigrant-

5

juveniles/history-sij-status; *see also Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 3.  SIJ status allows the juvenile to then *apply* for lawful permanent residency and remain in the United States *pending* the result of that request.  *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (emphasis added).

Judge Diamond in *Osorio-Martinez* stated, "[a]pproval of an SIJ petition 'does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for . . . adjustment of status.'  *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 4 (citing *A.D. M.-L. v. Kelly*, No 17-678, Doc. No. 1 at 138 (Nov. 28, 2016 Notice of Approval for SIJ Status))."  Judge Diamond continued, "[o]nce granted SIJ status, however, the juvenile may file with the USCIS a Form I-485, Application to Register Permanent Residence or Adjust Status."  *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 3.  Under 8 U.S.C. § 1255(a), an alien inspected and admitted or paroled into the United States is eligible for adjustment status if:

> (1) the alien makes an application for such adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and *(3) an immigrant visa is immediately available to him at the time his application is filed*.

8 U.S.C. § 1255(a) (emphasis added).  Although SIJ-designated alien/immigrants are deemed paroled in the United States under § 1255(a) – a legal fiction defined below – "*nothing in [§ 1225(h)] or [§] 1101(a)(27)(j) of this title shall be construed as authorizing an alien to apply for admission or be admitted to the United States in order to obtain special immigrant status or described in such section.*"  *Id.* at § 1255(h) (emphasis added).

6

Similar to Cruz-Gonzalez and daughter, Minor Plaintiffs in *Osorio-Martinez* obtained orders from the Berks County Common Pleas Court finding "reunification with one or both parents was not viable due to abuse, neglect, or abandonment, and that it would not be in the child's best interest to be returned to his or her country of origin." *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 4 (citing Doc. No. 21, at 8). After receiving SIJ status, Minor Plaintiffs in *Osorio-Martinez* filed Form I-485 applications to adjust status, however, visas were not immediately available for each Minor Plaintiff. *Id.* at 5 (citing Rosenstock Decl.¶¶ 8-17). "Because it is unknown when visas may become available for minor Plaintiffs, their Applications to Adjust status are 'pending' indefinitely." (Id.) Thus, Judge Diamond concluded Minor Plaintiffs were ineligible for lawful permanent residency. *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 5.

## II. Cruz-Gonzalez and Minor Child, D.M.S.C.

Cruz-Gonzalez, on behalf of her minor child D.M.S.C., requests a writ of habeas corpus or injunctive relief from expedited removal. This Court will address subject-matter jurisdiction, the elements of injunctive relief, and whether Cruz-Gonzalez and her daughter are entitled such relief.

### a. Subject-Matter Jurisdiction

Before any court can act on a matter, subject-matter jurisdiction must be established. Subject-matter jurisdiction cannot be forfeited or waived. *Arbaugh v. Y & H Corp.*, 546 U.S. 514 (2006). Every court, including this one, has an independent obligation to determine whether subject-matter jurisdiction exists and the "plaintiff's ability to obtain relief whatsoever necessarily depends on his ability to establish subject

7

matter jurisdiction. " *Id.*; *see also DeVito v. HEM, Inc.*, 705 F. Supp. 1076, 1078 (M.D. Pa. 1988). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Id.* Therefore, if no subject-matter jurisdiction exists, the plaintiff has no probability of succeeding on the merits and would not be entitled to injunctive relief. *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 7.

b. Injunctive Relief

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in his favor, and that an injunction is in the public interest"; the failure to establish any element "renders preliminary injunction inappropriate." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *see also Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). A preliminary injunction is a "drastic remedy" and should only be granted if the movant carries the burden of persuasion and shows that each of the above listed elements weigh in favor of granting a preliminary injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A Wright & Miller, Fed. Prac. & Proc. § 2948 (2d ed. 1995)); *see also* Fed. R. Civ. P. 65(a); *see also Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 8 (citing *Punnett v. Carter*, 621 F.2d 578, 588 (3d Cir. 1980)); *see also Ferring Pharmaceuticals, Inc.*, 765 F.3d at 210 (concluding that a failure to establish any element renders preliminary injunction inappropriate). As this Court has stated, when the purpose of an injunction is

to provide mandatory relief, the burden of persuasion is particularly heavy. *Republican Party of Pennsylvania v. Cortes*, 218 F. Supp. 3d 396, 404 (E.D. Pa. 2016).

Federal courts must have subject-matter jurisdiction over the claim to issue an injunction and "may not attempt to determine the rights of persons not before the court." *Zepeda v. U.S. INS*, 753 F.2d 719, 727 (9th Cir. 1983). "[A]n injunction binds only 'the parties to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them who receive actual notice of the order . . .' therefore, [the court must] tailor the injunction to affect only those persons over which it has power." Thus, subject-matter jurisdiction is required before granting a preliminary injunction.

### i. Success on the Merits

First, injunctive relief requires a showing that the movant has a likelihood of success on the merits. *Winter*, 555 U.S., at 20. As this Court and the Third Circuit previously concluded, "§ 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute."[1] A fair reading of this statute does not give this Court jurisdiction over claims relating to expedited removal orders. Specifically, "no court may . . . enter declaratory,

---

[1] **(e) Judicial review of orders under section 1225(b)(1):**
**(1) Limitations on relief:** Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may:
(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection, or; (B) certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection.
**(2) Habeas corpus proceedings:** Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of:
(A) whether the petitioner is an alien; (B) whether the petitioner was ordered removed under such section; and(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien, lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title. 8 U.S.C. § 1252(e)(1)-(2).

9

injunctive, or other equitable relief in any action pertaining to an [expedited removal order issued under §] 1225(b)(1). . ." 8 U.S.C. § 1252(e)(1); *see also Castro*, 835 F.3d at 426-427.  Moreover, the Third Circuit has upheld broad restrictions on judicial review of final orders.  *Castro*, 835 F.3d at 450.

Cruz-Gonzalez argues that her rights changed when the USCIS granted SIJ status and therefore deportation to El Salvador violates the Immigration and Nationality Act.  (ECF Docket No. 46-1, at ¶¶ 78-84.)  However, the SIJ status granted under an I-360 Petition "does not itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for . . . adjustment of status." (ECF Docket No. 44-1, at 2 (Feb. 22, 2017 Notice of Approval for SIJ Status)); *see also A.D. M.-L. v. Kelly*, No 17-678, Doc. No. 1 at 138 (Nov. 28, 2016 Notice of Approval for SIJ Status).

Cruz-Gonzalez further argues that her newly granted SIJ status "deem[s] [her], for purposes of [8 U.S.C. § 1255(a)] . . . paroled in the United States" according to 8 U.S.C. § 1255(h)(1).  (ECF Docket No. 46-1, at ¶79.)  Additionally, relying on 8 U.S.C. § 1255(h)(2)(A), Cruz-Gonzalez claims 8 U.S.C. § 1182(a)(6)(A), (6)(C), and 7(A) "shall not apply" in determining her admissibility.  (Id.)  Therefore, similar to plaintiffs' argument in *Osorio-Martinez*, Plaintiff here relies on her new status as a SIJ and contends she (on behalf of her daughter) is exempt from removal under § 1225(b)(1) because only "aliens 'who ha[ve] not been admitted or paroled into the United States' can be subject to expedited removal under § 1225(b)(1)(A)." (ECF Docket No. 46-1, at ¶80); *see also Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 10.

This Court disagrees. Following Judge Diamond in *Osorio-Martinez*, "[t]his distortion of the law is based on Plaintiffs' decision to ignore the INA's distinction between being 'paroled' and being 'deemed paroled': the latter is a legal fiction created only to allow DHS to determine whether an alien is eligible for an immigrant visa under § 1255(a)." *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 10. The government correctly argued being "deemed paroled" for limited purposes is not the same as actually being paroled, "and does not cancel a final order of removal or an underlying basis of inadmissibility or removability[.]" (ECF Docket No. 48, at 9.) Judge Diamond continued, "nothing in [§ 1225(h) (i.e., application with respect to special immigrant juveniles)] or [§ 1101(a)(27)(j) (i.e., the SIJ enabling statute)] of this title shall be construed as authorizing an alien to apply for admission or be admitted to the United States in order to obtain special immigrant status as described in such section." *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 10 (citing 8 U.S.C. § 1255(h)).

However, § 1255(h)(2) applies to minors seeking adjustment of status *only after* visas are made available. 8 C.F.R. § 245.1(g)(1) (emphasis added). "An alien is ineligible for the benefits of [section 1255] unless an immigrant visa is *immediately available* to him or her at the time the application is filed." *Id.* (emphasis added). Here, immigrant visas are currently not available for Cruz-Gonzalez and her daughter. Therefore, Plaintiff is not eligible for adjustment of status.[2] (ECF Docket No. 48, at 9-10.)

---

[2] The Government argues Cruz-Gonzalez and her daughter are currently ineligible for immigration visas due to the oversubscription of immigration visas. (ECF Docket No. 48, at 9.) "As Defendants explained at the March 22, 2017 hearing, [Cruz-Gonzalez] will not be eligible to apply for such status for some time, given that the State Department is, as of April 2017, only adjudicating immigrant visa applications in Plaintiff's appropriate visa class and geographic area, the fourth employment-based preference, with a priority date from July 2015 due to the fact that such immigrant visas are subject to an annual cap and are

Given this Court's lack of jurisdiction in this matter and constitutional limitation of judicial review of final orders, Cruz-Gonzalez fails to demonstrate a likelihood of success on the merits. Additionally, Cruz-Gonzalez's SIJ status does not change our analysis and "the SIJ designation itself provides no separate basis to review their removal." *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 11. As defined above, preliminary injunctions require the essential element of "a likelihood of success on the merits." *Id.* (citing *Sypniewski v. Warren Hills Regional Bd. of Educ.*, 307 F.3d 243, 252 (3d Cir. 2002) (finding likelihood of success on the merits an "essential element"). Therefore, we must deny Plaintiff's application for preliminary injunction on this basis.

## ii. *Irreparable Harm*

Second, injunctive relief requires a showing of irreparable harm to the movant if the injunction is denied. However, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S., at 21 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In *Osorio-Martinez*, Judge Diamond concluded Minor Plaintiffs faced grave danger if deported to Central America even though DHS previously found they lacked a credible fear of persecution or torture. *Osorio-Martinez, et al.*, 5:17-cv-01747, ECF Docket No. 31, at 11. He also considered plaintiffs' imminent loss of SIJ status and

---

currently oversubscribed." (Id. at 9-10.) (citing Dep't of State, Visa Bulletin for April 2017, https://travel.state.gov/content/visas/en/law-and-policy/bulletin/2017/visa-bulletin-for-april-2017.html (last accessed April 3, 2017)) (citing *Zhao Xin Zhu v. Attorney Gen. of U.S.*, 293 Fed. App'x 184, 186 (3d Cir. 2008) (explaining lack of an immediately available visa precludes an individual from applying for adjustment of status)).

12

lengthy immigration process if he denied their preliminary injunction. Judge Diamond correctly determined Minor Plaintiffs would suffer immediate and irreparable harm which would weigh in favor of issuing an injunction. However, Judge Diamond weighed the irreparable harm of deportation with the remaining requirements necessary for a preliminary injunction and ultimately denied the relief sought.

In the instant case, DHS similarly found Cruz-Gonzalez and her daughter lacked a credible fear of persecution or torture. This Court however finds that Plaintiff does face grave danger from MS-13 upon returning to El Salvador. Similar to plaintiffs in *Osorio-Martinez*, this Court finds that Cruz-Gonzalez and her daughter would suffer irreparable harm if this Court denies the preliminary injunction and deports them back to El Salvador.

Plaintiff also maintains that her daughter's continued detention violates the *Flores v. Lynch* Consent Decree, causing irreparable harm to both her and her daughter. (ECF Docket No. 46-1, at 2.) "The *Flores* Decree 'sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS' . . . [and] authorizes class members to challenge the custodial decision regarding the minor in 'any United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards.'" (ECF Docket No. 46-1, ¶¶24-35 at 7-9.) (citations omitted). However, the Government argues Plaintiff's request for release under *Flores* is not recognized under Paragraph 24(B) which only allows for two types of actions to be challenged: "(1) the determination to place a minor in a particular type of facility, and (2) the failure of the licensed facility to comply with the

standards set for in the Exhibit 1 of the agreement." (ECF Docket No. 48, at 17.) (citing ECF Docket No. 9, at 10.)

Notwithstanding the *Flores* Decree and corresponding arguments, this Court finds irreparable harm likely in the absence of an injunction. Following *Osorio-Martinez*, Cruz-Gonzalez will suffer irreparable harm by losing the benefit of her SIJ status and restarting the visa application process. Accordingly, the irreparable harm – *one of four factors* in a preliminary injunction determination – weighs in favor of granting the injunction. (emphasis added). As previously noted, however, a preliminary injunction is an extraordinary remedy and never awarded as of right. *Winter*, 555 U.S., at 24.

### iii. *Public Interest and Balancing Equities*

Finally, a preliminary injunction requires the balancing of equities and consideration of the public interest. *Winter*, 555 U.S., at 32. This Court will address both elements together. *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[A]ssessing the harm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party).

First, the public has an interest in the efficient enforcement of immigration laws, whether enforcing prompt execution of removal orders or preventing aliens from being wrongfully removed. *Nken*, 556 U.S., at 436. "There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'premit[s] and prolong[s] a continuing violation of United States law.'" *Id.* (citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 490 (1999)). The public's interest in a prompt removal may also be guided by factors such as whether the

alien is "particularly dangerous," or whether the alien has "substantially prolonged his/her stay by abusing the process afforded to him/her." *Id.* (providing examples of "abuse of process" such as "postponing justifiable deportation (in the hope that the alien's status will change – by, for example, marriage to an American citizen – or simply with the object of extending the alien's unlawful stay) is often the principal object of resistance to a deportation proceeding").

However, there is also an interest in preventing the wrongful removal of aliens, especially when they are likely to face substantial harm returning to their country. *Nken*, 556 U.S., at 436. Certainly, removing a twenty (20) year old mother and her four (4) year old daughter and sending them back to El Salvador – where MS-13 operates nearly undeterred – is very concerning to this Court given the volatility of El Salvador and increased gang-centric crime. Dep't of State, El Salvador 2017 Crime & Safety Report, https://www.osac.gov/pages/ContentReportDetails.aspx?cid=21308 (last accessed July 14, 2017).

The INA's expedited removal procedures prevent this Court from reviewing Cruz-Gonzalez's final removal order. "In 1996, Congress enacted the AEDPA and IIRIRA to reorder and curtail court review of deportation and exclusion decisions." *Bakhtriger v. Elwood*, 360 F.3d 414, 418 (3d Cir. 2004), *superseded by statute on other grounds*, REAL ID Act of 2005, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310-11 (2005); *see also Landon v. Plasencia*, 459 U.S. 21, 24 (1982) (concluding the government's interest in the efficient administration of immigration laws at the border substantial and "must weigh heavily in the balance that control over matters of

immigration is a sovereign prerogative, largely within control of the executive and legislature."). The Court fully understands this important concept.

The public's interest in the efficient administration of the Country's Immigration policy outweighs Cruz-Gonzalez's claims even when balanced against deporting Cruz-Gonzalez and her daughter back to El Salvador where MS-13 operates. Thus, weighing both the public interest and equity of the Government's final removal order coupled with the risk of deporting Cruz-Gonzalez and her daughter to El Salvador, this Court finds that Cruz-Gonzalez's claims cannot outweigh the substantial government interest.

**C.    CONCLUSION**

Therefore, this Court must deny Cruz-Gonzalez's preliminary injunction because she cannot succeed on the merits of her claim and therefore fails to satisfy the most important element of injunctive relief. Going right to the merits, this Court and our circuit court of appeals have already concluded that the federal courts are without jurisdiction to hear these claims. This is a substantial and overriding argument in these cases. Unfortunately, even if this Court concludes that Cruz-Gonzalez and D.M.S.C. would suffer irreparable harm by being deported, Cruz-Gonzalez still fails to satisfy all elements for injunctive relief, most specifically a likelihood of success on the merits. Plaintiffs in *Castro* and *Osorio-Martinez* have also similarly failed when challenging their detention and expedited removal for these same reasons. Accordingly, Plaintiff's request for relief is denied.